## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| NOBILIS HEALTH CORP., *et al.*, | ) | Case No. 19-12264 (CTG) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | |
| ALFRED T. GIULIANO, in his capacity as | ) | C.A. No. 24-737 (MN) |
| Chapter 7 Trustee for the jointly administered | ) | Adv. Proc. No. 21-51183 (CTG) |
| bankruptcy estates of Nobilis Health Corp*., et al.*, | ) | Bankr. BAP No. 24-0039 |
| Appellant, | ) | |
| v. | ) | Bankruptcy Appeal |
| | ) | |
| HARRY J. FLEMING; P. DAVID YOUNG; | ) | |
| BRANDON MORENO; KENNETH EFIRD; | ) | |
| STEVE OZONIAN; and MARCOS | ) | |
| RODRIGUEZ, | ) | |
| Appellees. | ) | |
| | ) | |
| ALFRED T. GIULIANO, in his capacity as | ) | C.A. No. 24-738 (MN) |
| Chapter 7 Trustee for the jointly administered | ) | Adv. Proc. No. 23-50486 (CTG) |
| bankruptcy estates of Nobilis Health Corp., *et al.*, | ) | Bankr. BAP No. 24-0040 |
| Appellant, | ) | |
| v. | ) | Bankruptcy Appeal |
| | ) | |
| HARRY J. FLEMING; P. DAVID YOUNG; and | ) | |
| BRANDON MORENO, | ) | |
| Appellees. | ) | |
| | ) | |
| ALFRED T. GIULIANO, in his capacity as | ) | C.A. No. 24-1109 |
| Chapter 7 Trustee for the jointly administered | ) | Adv. Proc. No. 21-51183 |
| bankruptcy estates of Nobilis Health Corp., *et al.*, | ) | |
| Appellant, | ) | |
| v. | ) | |
| | ) | |
| HARRY J. FLEMING; P. DAVID YOUNG; | ) | |
| BRANDON MORENO; KENNETH EFIRD; | ) | |
| STEVE OZONIAN; and MARCOS | ) | |
| RODRIGUEZ, | ) | |
| Appellees. | ) | |
| | ) | |

## APPELLEE HARRY J. FLEMING'S OPENING BRIEF

**CHIPMAN BROWN CICERO**
  **& COLE, LLP**
Mark L. Desgrosseilliers (No. 4083)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801


**PAUL HASTINGS LLP**
Paul R. Genender (admitted *pro hac vice*)
Jake Rutherford (admitted *pro hac vice*)
Marco Vasquez Jr. (admitted *pro hac vice*)
2001 Ross Avenue, Suite 2700
Dallas, Texas 75201


Dated: January 22, 2025
        Wilmington, Delaware

**LYNN PINKER HURST &**
  **SCHWEGMANN, LLP**
Edward Jason Dennis (admitted *pro hac vice*)
Kent Krabill (admitted *pro hac vice*)
Leo Park (admitted *pro hac vice*)
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201

# TABLE OF CONTENTS

**Page**

STATEMENT OF THE ISSUES PRESENTED AND STANDARD OF REVIEW.................... 1

STATEMENT OF THE CASE......................................................................................... 2

I.     Appellant Files a Meritless Breach-of-Fiduciary-Duty Action. ...................................... 2

II.    Appellant Files a Meritless Equitable Subordination Action. ........................................ 5

III.    The Bankruptcy Court Rejects Appellant's Arguments and Enters Judgment................. 5

SUMMARY OF THE ARGUMENT ........................................................................... 6

ARGUMENT ............................................................................................................... 8

I.     The bankruptcy court correctly granted Fleming summary judgment on Appellant's breach-of-fiduciary-duty claims. ................................................... 8

    a.    Appellant only preserved a handful of legal theories for appeal. ........................ 10

    b.    Fleming's general knowledge of a policy change does not present a genuine issue of material fact. ............................................................. 12

    c.    Fleming's approval of figures or certification that included the 365+ AR Policy change does not present a genuine issue of material fact. ....................... 13

    d.    Fleming's general knowledge that Nobilis's Revenue Recognition Committee did not participate in the decision to change the 365+ AR Policy does not present a genuine issue of material fact. ................................... 16

II.    The bankruptcy court correctly concluded that Appellant's claims independently fail because he did not present a genuine issue of material fact regarding damages....... 19

III.    The bankruptcy court correctly dismissed the equitable subordination complaint.......... 20

CONCLUSION.................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Aéropostale, Inc.*,
    555 B.R. 369 (Bankr. S.D.N.Y. 2016) ........................................................21

*In re AgFeed USA, LLC*,
    558 B.R. 116 (Bankr. D. Del. 2016) ...........................................................9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................................1

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...................................................................................1

*In re Caremark Int'l Inc. Deriv. Litig.*,
    698 A.2d 959 (Del. Ch. 1996) ............................................................ *passim*

*Castellani v. Bucks Cnty. Municipality*,
    351 F. App'x 774 (3d Cir. 2009) (unpublished) ........................................1

*Cede & Co. Technicolor, Inc.*,
    634 A.2d 345 (Del. 1993) ...........................................................................8

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ...................................................................................1

*In re China Automotive Sys. Deriv. Litig.*,
    No. 7145–VCN, 2013 WL 4672059 (Del. Ch. Aug. 30, 2013) .............15, 16

*In re Citigroup Inc. S'holder Deriv. Litig.*,
    964 A.2d 106 (Del. Ch. 2009) ..................................................................16

*City of Birmingham Ret. & Relief Sys. v. Good*,
    177 A.3d 47 (Del. 2017) .............................................................................9

*Doe v. Univ. of Sciences*,
    961 F.3d 203 (3d Cir. 2020) .......................................................................1

*Eng.-Speaking Union v. Johnson*,
    381 B.R. 1 (D.D.C. 2008), *aff'd*, 321 F. App'x 4 (D.C. Cir. 2009) (per curiam) ....................21

*In re Fedders N. Am., Inc.*,
    405 B.R. 527 (Bankr. D. Del. 2009) ...........................................................9

iv

*Rich ex rel. Fuqi Int'l, Inc. v. Yu Kwai Chong*,
   66 A.3d 963 (Del. Ch. 2013)............................................................................................9

*General Elec. Co. v. Joiner*,
   522 U.S. 136 (1997)........................................................................................................20

*In re John Varvatos Enters. Inc.*,
   No. 21-2766, 2022 WL 2256017 (3d Cir. June 23, 2022) (unpublished)...........................22

*Lyondell Chem. Co. v. Ryan*,
   970 A.2d 235 (Del. 2009) ...............................................................................................18

*In re McDonald's Corp. Stockholder Deriv. Litig.*,
   289 A.3d 343 (Del. Ch. 2023)..............................................................................7, 9, 18

*McMullin v. Beran*,
   765 A.2d 910 (Del. 2000) ..................................................................................................9

*Metro Storage Int'l LLC v. Harron*,
   275 A.3d 810 (Del. Ch. 2022)........................................................................................19

*Morris v. Spectra Energy Partners (DE) GP*,
   246 A.3d 121 (Del. 2021) ..................................................................................................9

*In re MultiPlan Corp. S'holders Litig.*,
   268 A.3d 784 (Del. Ch. 2022)...........................................................................................8

*Roth v. Norfalco LLC*,
   651 F.3d 367 (3d Cir. 2011).............................................................................................1

*Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*,
   113 F.3d 405 (3d Cir. 1997).............................................................................................2

*Stone v. Ritter*,
   911 A.2d 362 (Del. 2006) ..................................................................................................9

*Tse v. Ventana Med. Sys., Inc.*,
   297 F.3d 210 (3d Cir. 2002)..............................................................................................1

*UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*,
   949 F.3d 825 (3d Cir. 2020)............................................................................................20

*In re Ultimate Escapes Holdings, LLC*,
   551 B.R. 749 (D. Del. 2016), *aff'd*, 682 F. App'x 125 (3d Cir. 2017) ...................7, 9, 18

*Walker v. E.I. Dupont De Nemours & Co.*,
   199 F. Supp. 3d 883 (D. Del. 2016).......................................................................10, 11, 12

*In re Walt Disney Co. Deriv. Litig.*,
    907 A.2d 693 (Del. Ch. 2005), *aff'd*, 906 A.2d 27 (Del. 2006)............................................7, 9

*Wharton v. Danberg*,
    854 F.3d 234 (3d Cir. 2017).................................................................................13, 17

*Willis v. UPMC Children's Hosp. of Pitt.*,
    808 F.3d 638 (3d Cir. 2015).......................................................................................1, 7

*In re Winstar Comms., Inc.*,
    554 F.3d 382 (3d Cir. 2009)...........................................................................................21

*Wood v. Baum*,
    953 A.2d 136 (Del. 2008) ..............................................................................................15

**Statutes**

11 U.S.C. § 510(c)(1)...........................................................................................................21

**Rules**

Fed. R. Bankr. P. 8014(e).....................................................................................................8

Fed. R. Bankr. P. 8021(a)(2)...............................................................................................24

Fed. R. Civ. P. 12(b)(6)...............................................................................................1, 5, 6

Fed. R. Evid. 702(c) ..........................................................................................................20

**STATEMENT OF THE ISSUES PRESENTED AND STANDARD OF REVIEW**

1.      Whether the Bankruptcy Court properly granted summary judgment in favor of Appellee Harry J. Fleming ("**Fleming**") on the breach-of-fiduciary-duty claims?

Courts review a grant of a motion for summary judgment de novo. *Castellani v. Bucks Cnty. Municipality*, 351 F. App'x 774, 776 (3d Cir. 2009) (unpublished). "Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." *Tse v. Ventana Med. Sys., Inc.*, 297 F.3d 210, 218 (3d Cir. 2002). "Material facts are those that could affect the outcome of the proceeding, and a dispute about a material fact is genuine if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Roth v. Norfalco LLC*, 651 F.3d 367, 373 (3d Cir. 2011) (citation and internal quotation marks omitted). It is the non-movant's burden to point to material "facts in the record" regarding the "essential elements of [his] case for which [he has] the burden of proof." *Willis v. UPMC Children's Hosp. of Pitt.*, 808 F.3d 638, 643 (3d Cir. 2015) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

2.      Whether the Bankruptcy Court properly dismissed the equitable subordination complaint?

Courts also review a grant of a motion to dismiss de novo. *Doe v. Univ. of Sciences*, 961 F.3d 203, 208 (3d Cir. 2020). To survive a motion to dismiss under Rule 12(b)(6), the complaint must contain sufficient factual matter, accepted as true, "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The allegations contained in the complaint must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]" *Id.* at 555; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice."). Allegations that are "unsupported conclusions and unwarranted inferences" are insufficient. *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997).

## STATEMENT OF THE CASE

Debtor Nobilis Health Corp. ("**Nobilis**") was a publicly-traded healthcare company that owned and operated surgical centers in Texas and Arizona. D.I. 25-2 at [A45].[1] Fleming is a former officer and director of Nobilis who served as Nobilis's Chief Executive Officer from January 2016 to December 2018 and as a member of Nobilis's Board of Directors from 2010 through June 2016 and then again from November 2017 through October 2019. D.I. 25-2 [A43].

### I.    Appellant Files a Meritless Breach-of-Fiduciary-Duty Action.

Almost two years after Nobilis filed for bankruptcy, Appellant Alfred T. Giuliano, in his capacity as Chapter 7 Trustee for the jointly administered bankruptcy estates of Nobilis ("**Appellant**"), sued Fleming and other Nobilis officers and directors under various breach-of-fiduciary-duty theories in a misguided attempt to hold them liable for Nobilis's downfall. D.I. 25-2 [A40–A103].

Nobilis operated primarily as an out-of-network healthcare provider, which meant that Nobilis did not have contracts with major insurance payors. D.I. 25-13 [A523] (sealed). Because

---

[1] Fleming's citation key is as follows: (1) "D.I. XX-XX" refers to this Court's ECF docket entries; (2) "Adv. D.I. XX-XX" refers to the Bankruptcy Court's ECF entries in Adversary Proceeding No. 21-51183 (breach of fiduciary duty); (3) "[AXX]" refers to Appellant's appendix on appeal to this Court; (4) "[BXX]" refers to Fleming's appendix on appeal to this Court (which will be filed contemporaneously with this Opening Brief); and (5) "Main Bank. D.I. XX-XX" refers to the Bankruptcy Court's ECF entries in the Chapter 7 proceeding in the United States Bankruptcy Court for the District of Delaware, styled *In re Nobilis Health Corp., et al.*, bearing Case No. 19-12264. In addition, any reference to documents that were filed under seal in any of the foregoing cases will also include a reference of "(sealed)." If there are page numbers associated with citations to ECF docket entries, those page numbers refer to the ECF page numbers at the top of the ECF docket entry.

of the uncertainty associated with out-of-network healthcare services, Nobilis had to estimate the money it expected to collect from payors based on a number of factors, including the facility performing the procedure, the payor, the physician, the type of procedure, and the actual collections history.  D.I. 25-2 [A46]; D.I. 25-13 [A562] (sealed); Adv. D.I. 185-7 [B0034]; Adv. D.I. 185-8 [B0105]; Adv. D.I. 185-9 [B0243–B0244]; Adv. D.I. 185-10 [B0578]; D.I. 25-13 [A664] (sealed); D.I. 25-13 [A723] (sealed).  Given the nature of revenue estimation, Nobilis's accounts receivable—the money Nobilis was owed for services that had been provided—increased due to a number of unforeseeable events.  For example, Hurricane Harvey, which landed in Houston, Texas in late August 2017, caused "numerous facilities, offices, clinics, as well as [Nobilis's Central Billing Office] itself, [to] shut down, which caused a lapse in continuing the process of billing and collecting."  Adv. D.I. 185-15 [B0713]; *see also* Adv. D.I. 185-19 [B0795]; Adv. D.I. 185-23 [B0828].  For another, the healthcare space experienced increasing pushback from payors against reimbursing out-of-network charges.  D.I. 25-13 [A842] (sealed).  Given these changing circumstances, Nobilis reevaluated its approach to a growing population of accounts receivable that were aged over 365 days.  D.I. 25-13 [A560–A561] (sealed).

Before Nobilis reevaluated its approach to accounts receivable in 2017, Nobilis wrote off most—but not all—of its accounts receivable that were outstanding for more than a year.  Adv. D.I. 185-13 [B0669–B0670].  But in late 2017, Nobilis conducted analyses and determined that insurers would ultimately pay for a larger share of these accounts receivable than originally predicted.  Adv. D.I. 185-13 [B0673–B0675]; Adv. D.I. 185-20 [B0806–B0814].  After a multi-layered review, Nobilis ultimately decided not to write off certain accounts receivable because Nobilis determined that some remained collectable (at a discount).  Adv. D.I. 185-13 [B0673–B0691].  Nobilis's policy change—what the Parties often refer to as the 365+ AR

Policy—forms the primary basis for Appellant's breach-of-fiduciary-duty claims against Fleming (and the other appellees).  D.I. 25-2 [A40–A42, A47, A51–A52, A55–A57].

While Appellant takes issue with Fleming's conduct in connection with Nobilis's financials, and particularly the 365+ AR Policy, the record establishes that Fleming assembled a team of highly qualified executives, retained a top accounting firm (Crowe Horwath LLC) with experience in both healthcare and revenue cycle, hired additional revenue cycle staff, formed the Revenue Recognition Committee to evaluate Nobilis's accounts receivable and facilitate inter-company dialogue, and ensured that Nobilis had a rigorous, multi-layered review of Nobilis's financials.  Adv. D.I. 185-15 [B0703] (executives); D.I. 25-13 [A535–A536] (accounting firm) (sealed); Adv. D.I. 185-17 [B0758] (revenue cycle staff); Adv. D.I. 185-14 [B0693]; Adv. D.I. 185-18 [B0776–B0777]; Adv. D.I. 185-19 [B0793–B0794] (Revenue Recognition Committee); Adv. D.I. 185-15 [B0704] (multi-layered review).  Indeed, Fleming did not sign his certification of Nobilis's financials until after Nobilis's 10-Qs had gone through numerous layers of review, including signoff from the accounting firm Crowe Horwath LLC.  Adv. D.I. 185-15 [B0704]; *see also* D.I. 25-13 [A538] (sealed); Adv. D.I. 185-10 [B0571].

Despite Nobilis's and Fleming's good-faith and extensive efforts to weather the storm, Nobilis's financial health deteriorated as a result of third-party forces and events:  Hurricane Harvey striking at a sensitive time in the business, industry-wide changes in insurer payment practices, and Nobilis's lender's refusal to approve outside offers to buy Nobilis among many others.  *Supra* pp. 2–3; Adv. D.I. 185-45 [B0956–B0962].  As a result, Nobilis was forced to file for bankruptcy in October 2019.[2]  Adv. D.I. 185-45 [B0954–B0955].

---

[2] To streamline this Court's review, Fleming incorporates by reference as if fully set forth herein the factual background in his Motion for Summary Judgment.  D.I. 25-12 [A423–A436] (sealed); *see also* D.I. 25-15 [A986–A988].

## II.  <u>Appellant Files a Meritless Equitable Subordination Action</u>.

After filing his breach-of-fiduciary-duty action, Appellant brought a second action. D.I. 25-38 [A6054–A6088] (sealed).  In that case, Appellant sought to equitably subordinate claims that were assigned by the creditor BBVA USA ("**BBVA**") to Fleming, P. David Young ("**Young**"), and Brandon Moreno ("**Moreno**") via a settlement in another case brought by BBVA. *See* Notice of Partial Assignment (Main Bankr. D.I. 199).  As part of a comprehensive settlement, BBVA assigned to Fleming, Young, and Moreno all of BBVA's rights to any recovery or proceedings from that proceeding.  *See id.*  After Appellant filed this second action, Fleming, Young, and Moreno filed a Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  D.I. 25-39 [A6089–A6092]; D.I. 25-40 [A6093–A6109].

## III.  <u>The Bankruptcy Court Rejects Appellant's Arguments and Enters Judgment</u>.

On June 12, 2024, the bankruptcy court issued a well-reasoned and thorough opinion and dismissed Appellant's breach-of-fiduciary-duty claims against Fleming and dismissed Appellant's equitable subordination complaint.  D.I. 25-27 [A5724–A5774].  With respect to breach of fiduciary duty, the bankruptcy court agreed with Fleming that Appellant "failed to produce evidence that would permit a reasonable finder of fact to conclude that [he] breached [his] fiduciary duties."  D.I. 25-27 [A5726].  The bankruptcy court also concluded that "even if there were a breach of duty, the evidence is insufficient to permit a reasonable finder of fact to conclude that such a breach was causally related to the debtors' failure."  *Id.*  On this front, no reasonable fact finder could "conclude that it was the accounting errors, rather than the underlying economic reality the debtors faced in view of the change in insurer behavior, that caused [Nobilis's] failure."  D.I. 25-27 [A5726–A5727].  Thus, the bankruptcy court entered summary judgment in favor of Fleming.  D.I. 25-27 [A5727–A5728, A5774]; D.I. 25-28 [A5775].

With respect to the equitable subordination complaint, the bankruptcy court dismissed the complaint because Fleming, Young, and Moreno were entitled to summary judgment on Appellant's breach-of-fiduciary-duty claims. D.I. 25-27 [A5773]; D.I. 25-43 [A6142]. Indeed, Appellant conceded that his equitable subordination complaint is premised on succeeding on the breach-of-fiduciary-duty claims. D.I. 25-27 [A5773]. The bankruptcy court also offered an alternative basis for dismissing the equitable subordination complaint, as it was "far from clear that the claims that defendants acquired from BBVA would be subject to equitable subordination," and there was no allegation that Fleming, Young, or Moreno "did anything inequitable in connection with their acquisition of the claims." *Id.*

Following the bankruptcy court's decision, Appellant appealed to this Court. D.I. 25-31 [A5841–A5902] (breach of fiduciary duty); D.I. 25-45 [A6205–A6266] (equitable subordination). With respect to Fleming, Appellant's arguments fall into two broad buckets. ***First***, Appellant appeals the bankruptcy court's grant of summary judgment in favor of Fleming regarding Appellant's breach-of-fiduciary-duty claims. D.I. 24 at 15–17. Once again, Appellant tries to hold Fleming liable for Nobilis's unfortunate demise based on what Appellant characterizes as "false and materially misleading financial statements" in connection with Nobilis's change in the "methodology to estimate revenues and the carrying amount of accounts receivable." *Id.* at 14–15. ***Second***, Appellant appeals the bankruptcy court's dismissal of the equitable subordination complaint. *Id.* at 16.

## SUMMARY OF THE ARGUMENT

This Court should affirm the bankruptcy court's grant of summary judgment in favor of Fleming on Appellant's breach-of-fiduciary-duty claims and dismissal of Appellant's equitable subordination complaint.

Starting with breach of fiduciary duty, Appellant's claim "barely" survived the motion-to-dismiss stage. D.I. 25-3 [A118, A126]. The bankruptcy court warned Appellant "to present actual evidence from which a reasonable finder of fact might find that [Fleming] either [1] engaged in affirmative conduct that violated his . . . fiduciary duties or [2] failed to act in the face of a 'red flag.'" *Id.* [A119] (alterations added). Appellant faced an uphill battle: "Fiduciaries of a Delaware corporation are presumed to act in good faith." *In re McDonald's Corp. Stockholder Deriv. Litig.*, 289 A.3d 343, 378 (Del. Ch. 2023) (citing *In re Walt Disney Co. Deriv. Litig.*, 906 A.2d 27, 52 (Del. 2006)). The business judgment rule is robust. *See In re Ultimate Escapes Holdings, LLC*, 551 B.R. 749, 761 (D. Del. 2016), *aff'd*, 682 F. App'x 125 (3d Cir. 2017). And it is Appellant's burden to point to material "facts in the record" regarding the "essential elements of [his] case for which [he has] the burden of proof." *Willis*, 808 F.3d at 643 (citation omitted).

For breach of fiduciary duty, Appellant does not (and cannot) rebut the business judgment rule or the presumption that Fleming acted in good faith. Nor has Appellant shown that there is a genuine issue of material fact as to whether Fleming (1) failed to act in Nobilis's best interest; (2) acted in bad faith; or (3) acted in a grossly negligent manner. Appellant had ample opportunity to uncover evidence to support the wrongdoing he alleges. Appellant did not (because he cannot). As the bankruptcy court correctly concluded, "the summary judgment record would not permit a reasonable jury to conclude that defendants breached their duties." D.I. 25-27 [A5735]. The bankruptcy court also correctly concluded that Appellant "fail[ed] to provide evidence that would permit a reasonable factfinder to connect the accounting errors to the company's failure." D.I. 25-27 [A5770].

For equitable subordination, Appellant argues that the bankruptcy court erred by dismissing the complaint "because it was based on the erroneous grant of summary judgment on

the underlying breach of fiduciary duty claims." D.I. 24 at 16.  The bankruptcy court, however, properly dismissed the breach-of-fiduciary-duty claims against Fleming.  This Court can, and should, affirm the dismissal of the equitable subordination complaint on this basis alone.  Although Appellant challenges the bankruptcy court's alternative basis for dismissal—an argument this Court need not reach—Appellant failed to plausibly allege the required elements and failed to show that the bankruptcy court erred by declining to exercise the extraordinary remedy of subordination.

## ARGUMENT

As set forth below, this Court should affirm the bankruptcy court's well-reasoned decision to grant Fleming summary judgment on Appellant's breach-of-fiduciary-duty claims and dismiss Appellant's equitable subordination complaint.[3]

### I.    The bankruptcy court correctly granted Fleming summary judgment on Appellant's breach-of-fiduciary-duty claims.

The bankruptcy court correctly granted summary judgment in favor of Fleming on Appellant's breach-of-fiduciary-duty claims.  Appellant asserted breach-of-fiduciary-duty claims against Fleming under three theories:  (1) duty of loyalty; (2) duty of care; and (3) *Caremark*.[4]

The duty of loyalty requires an officer to put "the best interest of the corporation and its shareholders" over his or her personal interest.  *In re MultiPlan Corp. S'holders Litig.*, 268 A.3d 784, 799–800 (Del. Ch. 2022) (quoting *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 361 (Del. 1993)).  The duty of care requires an officer to (1) use the amount of care that an ordinarily careful and prudent person would use in similar situations; and (2) consider all material information

---

[3] Fleming adopts by reference the briefs submitted by the other Appellees in this appeal.  *See* FED. R. BANKR. P. 8014(e).

[4] *In re Caremark Int'l Inc. Deriv. Litig.*, 698 A.2d 959 (Del. Ch. 1996).

reasonably available. *In re Walt Disney Co. Deriv. Litig.*, 907 A.2d 693, 749 (Del. Ch. 2005), *aff'd*, 906 A.2d 27 (Del. 2006). To breach the duty of care, an officer's conduct must rise to the level of gross negligence. *In re Fedders N. Am., Inc.*, 405 B.R. 527, 539 (Bankr. D. Del. 2009). To succeed on a *Caremark* claim, a plaintiff must show that the director implemented systems or controls in response to red flags but "consciously failed to monitor or oversee its operations[,] thus disabling [the director] from being informed of risks or problems requiring [his or her] attention."[5] *In re AgFeed USA, LLC*, 558 B.R. 116, 126 (Bankr. D. Del. 2016) (quoting *Stone v. Ritter*, 911 A.2d 362, 370 (Del. 2006)). "[A] *Caremark* claim is '*possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment*.'" *Morris v. Spectra Energy Partners (DE) GP*, 246 A.3d 121, 133 n.57 (Del. 2021) (emphasis added) (quoting *City of Birmingham Ret. & Relief Sys. v. Good*, 177 A.3d 47, 55 (Del. 2017)).

Fleming's decision-making is entitled to deference. "Under the business judgment rule, a court will not second-guess the fiduciary's decision as long as it has any rational business purpose, even if the decision ends up being flawed in hindsight." *In re Ultimate Escapes*, 551 B.R. at 761. Indeed, a plaintiff carries the burden of rebutting the presumption that the business judgment rule applies. *McMullin v. Beran*, 765 A.2d 910, 917 (Del. 2000). Finally, a fiduciary is entitled to the presumption that he acted in good faith. *In re McDonald's Corp.*, 289 A.3d at 378.

Under these standards, the bankruptcy court correctly awarded Fleming summary judgment because Appellant did not, and could not, cite material evidence: (1) rebutting the business judgment rule and the presumption of good faith; (2) demonstrating Fleming placed his

---

[5] A *Caremark* claim is a type of an alleged breach of the duty of loyalty. *See, e.g.*, *Rich ex rel. Fuqi Int'l, Inc. v. Yu Kwai Chong*, 66 A.3d 963, 980 (Del. Ch. 2013) ("The essence of a *Caremark* claim is a breach of the duty of loyalty arising from a director's bad-faith failure to exercise oversight over the company.").

own interest over the interest of the corporation or the shareholders, let alone that Fleming acted in "bad faith" (duty of loyalty); (3) showing Fleming acted in a manner that surpasses gross negligence or deviated from the conduct that an ordinarily careful and prudent person would use in similar situations (duty of care); or (4) illustrating Fleming observed red flags and knowingly disregarded them in a manner that rises to bad faith (*Caremark*).

        a.   <u>Appellant only preserved a handful of legal theories for appeal.</u>

For the purposes of appeal, Appellant has preserved only three bases for the purported breaches of fiduciary duty. Before the bankruptcy court, Appellant discussed only two alleged breaches with respect to Fleming: (1) the 365+ AR Policy change; and (2) the financial certifications reflecting that change. D.I. 25-21 [A2536–A2538, A2546] (sealed). Appellant, therefore, abandoned any of his other theories as a matter of law. *See Walker v. E.I. Dupont De Nemours & Co.*, 199 F. Supp. 3d 883, 896 (D. Del. 2016) (concluding a claim was abandoned after the plaintiff failed to mention the claim in his response to a motion for summary judgment).

In support of Appellant's theories, he directed the bankruptcy court to four categories of evidence involving Fleming. This purported evidence indicated that Fleming:

1.    was aware of Nobilis's previous 365+ AR Policy;

2.    knew Nobilis's 365+ AR Policy changed;

3.    "blessed" Nobilis's revenue number; and

4.    knew that Nobilis's Revenue Recognition Committee violated its charge by not participating in the decision to change the 365+ AR Policy.

D.I. 25-21 [A2536–A2538] (sealed). Put differently, there is some evidence in the record that Fleming: (1) was generally aware of a policy change for calculating accounts receivable; (2) generally knew the committee he created did not participate in the decision to change the policy; and (3) signed off on figures that reflected the policy change. *Id.* [A2536–A2537] (sealed).

For purposes of appeal, Appellant has only presented two bases for the purported *Caremark* violations. Before the bankruptcy court, Appellant discussed only two alleged breaches with respect to Fleming: (1) knowledge that the prior 365+ AR Policy was enacted to prevent weaknesses in financial reporting; and (2) increases in Day Sales Outstanding, 365+ AR, and billing and collection backlogs. D.I. 25-21 [A2548–A2552] (sealed). The bankruptcy court acknowledged Appellant's purported "red flags" but rejected them because Appellant did "not explain the underlying systemic deficiencies to which the defendants should have been alerted by virtue of these 'red flags.'" D.I. 25-27 [A5755–A5756]. On appeal, Appellant exclusively focuses on Fleming's purported "aware[ness] of red flags concerning how [Nobilis] made decisions concerning revenue recognition" and "conscious[] fail[ure] to monitor or oversee the performance of the" Revenue Recognition Committee. D.I. 24 at 21–22. Appellant has therefore abandoned any other *Caremark* theories.[6] *See Walker*, 199 F. Supp. 3d at 896.

To summarize, Appellant has preserved only three bases underlying his duty of loyalty, duty of care, and *Caremark* claims against Fleming: (1) the 365+ AR Policy change; (2) the approval of figures or financial certifications reflecting that change; and (3) the Revenue Recognition Committee. Like the bankruptcy court, Fleming addresses each alleged breach in turn. *See* D.I. 25-27 [A5738–A5739].

---

[6] Appellant's *Caremark* theories have narrowed as the case has progressed. Appellant originally identified consistent turnover and reports that procedures were deficient as two additional "red flags." D.I. 25-12 [A447] (sealed). Appellant's response to Fleming's Motion for Summary Judgment, however, failed to address these alleged red flags. D.I. 25-21 [A2548–A2552] (sealed). And on appeal to this Court, the only two "red flags" that Appellant briefs, and therefore preserves, are the decisions concerning revenue recognition and the Revenue Recognition Committee. D.I. 24 at 21–22. To the extent the Court disagrees, Fleming incorporates by reference his arguments regarding these deficient theories. D.I. 25-12 [A443–A448] (sealed); D.I. 25-23 [A5525–A5528].

      b.  <u>Fleming's general knowledge of a policy change does not present a genuine issue of material fact</u>.

The bankruptcy court thoroughly examined the record and properly concluded that Fleming's conduct with respect to the 365+ AR Policy did not raise a genuine issue of material fact as to whether Fleming breached his fiduciary duties. D.I. 25-27 [A5748]. At most, the bankruptcy court explained, a reasonable fact finder could conclude "that the defendants participated in a decision by the company to take an accounting position that was later called into question by outside professionals." *Id.* [A5749]. But there is no material evidence that Fleming acted in his personal interest, in bad faith, or with gross negligence.

The summary judgment record demonstrates that, amid "many different parts moving at the same time," Nobilis "was integrating new facilities," "dealing with the results of a severe storm, and insurer payments had slowed." *Id.* [A5750–A5751]; *see also supra* pp. 3–4. As the bankruptcy court correctly noted, Nobilis accounted for receivables that were more than a year old **before** the 365+ AR Policy change that Appellant takes issue with. D.I. 25-27 [A5749]; *see also supra* p. 3. And even when Nobilis re-assessed its accounts receivable, Nobilis used a robust process, its auditor knew about the changes, and its auditor did not object to those changes. D.I. 25-27 [A5752]; *see also supra* p. 4. Simply put, there were numerous layers of review regarding Nobilis's financials, and Fleming worked to address anything that could conceivably constitute a red flag (even though there were no red flags). *See supra* p. 4. None of this record evidence indicates that Fleming (1) placed his own interest over the interest of the corporation or the shareholders, let alone that Fleming acted in "bad faith" (duty of loyalty); (2) acted in a manner that surpasses gross negligence or deviated from the conduct that an ordinarily careful and prudent person would use in similar situations (duty of care); or (3) observed red flags yet knowingly disregarded them and acted in bad faith (*Caremark*).

Indeed, Appellant offered the bankruptcy court nothing more than his speculation and conjecture that Fleming knew that the 365+ AR Policy change was designed to "inflat[e] revenues and assets." *See* D.I. 25-21 [A2538] (sealed). Appellant continues the same approach before this Court by arguing, without support, that Fleming was aware of, and approved, the purported plan "to disregard the 365+ AR Policy *for the purpose of* creating upsized revenues and falsely positive financial reports to avoid reporting a loss." D.I. 24 at 19 (emphasis added). Appellant's "speculation and conjecture" cannot "defeat a motion for summary judgment." *Wharton v. Danberg*, 854 F.3d 234, 244 (3d Cir. 2017) (alterations and citation omitted).

In any event, it is difficult to understand how circumstances surrounding a technical accounting practice would constitute a red flag for a CEO of a publicly traded company who is responsible for countless decisions. Indeed, Appellant's main argument to the bankruptcy court reveals a fundamental flaw. Appellant argued as follows: "Knowing that the 365+ AR Policy was enacted to prevent material weaknesses in financial reporting *should have* alerted Defendants to the *risks* of disregarding the policy in 2017 Q3." D.I. 25-21 [A2549] (emphasis added) (sealed). Even assuming for the sake of argument that each of these constitute "red flags" under *Caremark* (they do not), none of the record cites Appellant points to speak to Fleming's conscious disregard or bad faith. As the bankruptcy court put it, no reasonable factfinder could "conclude that Fleming consciously disregarded his obligations." D.I. 25-27 [A5765].

   c.  Fleming's approval of figures or certification that included the 365+ AR Policy change does not present a genuine issue of material fact.

The bankruptcy court correctly concluded that no reasonable factfinder could conclude that Fleming breached his fiduciary duties with respect to the issuing statements that stated Nobilis had not made material changes to its accounting policy and with respect to the subsequent Sarbanes-Oxley certification. D.I. 25-27 [A5757–A5758]. Relying on the business judgment rule, the

bankruptcy court acknowledged "that the defendants had a reasoned basis" for their decision-making.  D.I. 25-27 [A5758].  In particular, Nobilis consulted outside auditors, Nobilis did not disclose a policy of writing down all receivables more than a year old to zero, and Nobilis stated that its revenues were subject to continued evaluation based on multiple factors.  D.I. 25-27 [A5758–A5759].  Further, there is simply no evidence that Fleming knew his approval of figures was false.  D.I. 25-27 [A5759].  Indeed, "there is literally nothing in the summary judgment record that would support the conclusion that the defendants knew that their revised projections were wrong and their financial statements therefore inaccurate."  D.I. 25-27 [A5751].

There is no material evidence that Fleming breached any fiduciary duties as a result of aged accounts receivable that were included in Nobilis's net revenue estimates.  Nobilis included aged receivables because it reasonably, in good faith, believed that those amounts were collectable.  D.I. 25-12 [A421] (sealed).  In estimating revenue, Nobilis's team used historical data, including facility and payor information, as well as actual collections history, to determine on a claim-by-claim basis what portion of aged receivables remained collectable.  D.I. 25-13 [A723] (sealed); Adv. D.I. 185-23 [B0832–B0834] (historical data); Adv. D.I. 185-13 [B0674–B0675] (claim-by-claim calculation).  Moreover, Nobilis's independent auditor analyzed, reviewed, and signed off on Nobilis's financials with full knowledge that Nobilis had included aged receivables in its net revenue estimates.   D.I. 25-13 [A543–A544] (sealed); D.I. 25-13 [A828] (sealed); D.I. 25-13 [A541–A542] (sealed); Adv. D.I. 185-28 [B0847]; Adv. D.I. 185-29 [B0849]; D.I. 25-13 [A545–A546] (sealed); D.I. 25-13 [A817–A822] (sealed); D.I. 25-13 [A824–A825] (sealed); Adv. D.I. 185-28 [B0847]; Adv. D.I. 185-29 [B0849]; D.I. 25-13 [A831] (sealed).

Despite all of this, Appellant argued before the bankruptcy court that Fleming had a fiduciary duty to prepare "materially accurate and complete financial statements that comport with

GAAP and related SEC requirements." D.I. 25-21 [A2542] (sealed). None of this speaks to bad faith or gross negligence. The record shows that Fleming—before making any certifications—relied upon a skilled revenue cycle team, the Revenue Recognition Committee, the finance department, the Audit Committee, in-house and outside counsel, and Nobilis's reputable outside auditor to review and test the accuracy of Nobilis's filings, as well as to ensure the financial health of the company. D.I. 25-12 [A422] (sealed). Merely approving or signing the certifications is not enough to establish that Fleming was on notice that the certifications were false. Given these checks and balances, Fleming indisputably exercised reasonable care, used his business judgment, and kept the best interests of the company at the forefront in performing his duties. Indeed, reversing the grant of summary judgment based on this record would be more akin to strict liability for CEOs who cannot prevent a company downfall and is plainly contrary to Delaware law.

Fleming also did not breach his fiduciary duties with respect to the allegedly false Sarbanes-Oxley certification.[7] The Supreme Court of Delaware has concluded that a board's execution of "financial reports, without more, is insufficient to create an inference that the directors had actual or constructive notice of any illegality." *Wood v. Baum*, 953 A.2d 136, 142 (Del. 2008). In reaching that conclusion, the Supreme Court of Delaware explained that "Delaware law on this point is clear"—namely, "board approval of a transaction, even one that later proves to be improper, without more, is an insufficient basis to infer culpable knowledge or bad faith on the part of individual directors." *Id.* The Delaware Court of Chancery has echoed these principles in the context of financial statements and purported disclosure violations. *See In re China Automotive Sys. Deriv. Litig.*, No. 7145–VCN, 2013 WL 4672059, at *8 (Del. Ch. Aug. 30, 2013) ("A mere

---

[7] Appellant vaguely refers to these as "violation[s] of the company's obligations under the federal securities laws." D.I. 24 at 19.

statement that the Defendants 'caused' the filing of the allegedly misleading financial statements with the SEC is not, without more, a particularized allegation of fact."); *In re Citigroup Inc. S'holder Deriv. Litig.*, 964 A.2d 106, 133–34 (Del. Ch. 2009) ("[T]o establish a threat of director liability based on a disclosure violation, plaintiffs must plead facts that show that the violation was made knowingly or in bad faith, a showing that requires allegations regarding what the directors knew and when."). Relying on both of these cases then, the bankruptcy court correctly observed "there is nothing in the record that could support a finding that any defendant acted in bad faith or believed at the time that certifications were false." D.I. 25-45 [A6251–A6252].

    d.    <u>Fleming's general knowledge that Nobilis's Revenue Recognition Committee did not participate in the decision to change the 365+ AR Policy does not present a genuine issue of material fact.</u>

The bankruptcy court correctly concluded that no reasonable factfinder could conclude that Fleming breached his fiduciary duties with respect to Nobilis's Revenue Recognition Committee. D.I. 25-27 [A5760–A5761]. Fleming originally formed the Revenue Recognition Committee in February 2017:

> Team, I am forming a Revenue Recognition Committee effective immediately. Each of you will participate and you will collectively decide how you will operate and interface with management and Crowe (or any other auditor). For some time now I've been considering how we manage this extremely important function for the company. I have been seriously concerned that we have been putting this function on one person's shoulders.

D.I. 25-27 [A5761]. Appellant points to this email as evidence of Fleming's purported breach. D.I. 24 at 11, 15, 21. For example, Appellant claims that "Fleming did nothing to ensure that [the Revenue Recognition Committee] performed its critical financial function." *Id.* at 21. But "director liability is not measured by the aspirational standard established by the internal documents detailing a company's oversight system." *In re Citigroup*, 964 A.2d at 135; *see also* D.I. 25-27 [A5763] (acknowledging this reality). Instead, liability under the breach-of-fiduciary-

duty theories that Appellant pursues requires a showing that Fleming acted in bad faith (duty of loyalty), was more than grossly negligent (duty of care), or consciously failed to monitor or oversee controls in connection with red flags (*Caremark*).

Appellant's reliance on Fleming's formation of the Revenue Recognition Committee is not material evidence that speaks to any of these high legal standards. Nor does this email overcome the business judgment rule or the presumption of good faith. Instead, this email demonstrates Fleming's ***conscious regard*** for revenue recognition, as well as is yet another example of good-faith efforts to ensure accurate accounting. As the bankruptcy court put it: "If there were a red flag that Fleming observed regarding revenue recognition, he acted upon it by creating the revenue recognition committee." D.I. 25-27 [A5764]. What is more, Fleming's acknowledgment that revenue recognition is important, and that one person has a large workload, is immaterial to whether Fleming placed his own interest over the interest of the corporation or the shareholders, acted in bad faith, acted in a manner that surpasses gross negligence, or failed to respond to red flags.

In any event, the record shows that Fleming's response as CEO was comprehensive, D.I. 25-12 [A447–A448] (sealed), undermining Appellant's speculation that Fleming somehow consciously disregarded revenue concerns. *See Wharton*, 854 F.3d at 244 ("Speculation and conjecture may not defeat a motion for summary judgment." (alterations and citation omitted)). In fact, Nobilis "had an Audit Committee and an outside auditor that were concerned with revenue recognition." D.I. 25-27 [A5764]. While Appellant argues on appeal that Fleming violated his *Caremark* duties by failing to monitor or oversee the Revenue Recognition Committee, (D.I. 24 at 21–22), the proper *Caremark* inquiry is not whether an officer ensures a committee actually sets policies (or micromanages that committee). *See* D.I. 25-27 [A5764] (acknowledging *Caremark*

17

does not require a fiduciary "to micromanage"). Instead, the proper inquiry is, more broadly, whether an officer consciously failed to monitor or oversee systems and controls to a degree that disabled him from being informed of risks or problems.

In these ways, Appellant is simply wrong when he vaguely argues, without support, that the bankruptcy court "drew factual inferences in favor of the movants," "misapplied the governing legal principles," and ignored evidence. D.I. 24 at 17–18.

*    *    *

Appellant failed to present material evidence to overcome the presumption, under Delaware law, that Fleming acted—amid changing circumstances—in good faith and is protected under the business judgment rule from Appellant's second-guessing. *See In re McDonald's Corp.*, 289 A.3d at 378 (good faith); *In re Ultimate Escapes*, 551 B.R. at 761 (second guessing). Indeed, Appellant failed to point the bankruptcy court to any evidence of Fleming's purported bad faith, gross negligence, or failure to adequately respond to red flags. As the bankruptcy court put it: "the defendants acted within the range of discretion afforded to them under the business judgment rule with respect to how the company addressed the fact that, in the fall of 2017, cash collections were declining, and old accounts receivable remained on the books." D.I. 25-27 [A5756]. At a bare minimum, Delaware law distinguishes "between an inadequate or flawed effort to carry out fiduciary duties and a conscious disregard for those duties." *Lyondell Chem. Co. v. Ryan*, 970 A.2d 235, 243 (Del. 2009). Appellant failed to point the bankruptcy court or this Court to material evidence regarding Fleming's conscious disregard (because he could not). Accordingly, this Court should affirm the bankruptcy court's entry of summary judgment in Fleming's favor.

## II.  **The bankruptcy court correctly concluded that Appellant's claims independently fail because he did not present a genuine issue of material fact regarding damages.**

Before the bankruptcy court, Fleming also moved for summary judgment because Appellant did not provide material or admissible evidence of a causal link between Fleming's alleged wrongdoing and the millions in damages Appellant seeks.  Instead, Appellant offered mere speculation and ignored alternative causes for Nobilis's downfall.  D.I. 25-12 [A459–A460] (sealed).  Fleming also moved for summary judgment because Appellant's expert Harris L. Devor ("**Devor**"):  (1) provided no methodological basis for his conclusion on causation; (2) did not analyze other factors that contributed to Nobilis's downfall; and (3) attributed "red flags" to Crowe Horwath LLC, Nobilis's auditor—not Fleming.  D.I. 25-15 [A987–A988, A1015, A1019, A1022–A1024].  The bankruptcy court correctly concluded that Appellant "fail[ed] to provide evidence that would permit a reasonable factfinder to connect the accounting errors to the company's failure."  D.I. 25-27 [A5770].

To recover for breach of fiduciary duty, a plaintiff must point to admissible "evidence that a sufficient causal linkage exists between the breach of duty and the remedy sought to make the remedy an apt means of addressing the breach."  *Metro Storage Int'l LLC v. Harron*, 275 A.3d 810, 859 (Del. Ch. 2022).  On this front, Appellant insists that Fleming's purported breaches caused the eventual downfall of Nobilis.  D.I. 24 at 12, 18.  But, as the bankruptcy court noted, Appellant also acknowledged other factors that could have contributed to Nobilis's downfall, such as the fact that Nobilis was experiencing financial difficulties ***before*** it changed the 365+ AR Policy.  D.I. 25-27 [A5770–A5771].  And Appellant acknowledged that Nobilis derived a substantial portion of its revenue from complex (and volatile) out-of-network claims.  D.I. 25-21 [A2565–A2566] (sealed).  Yet, Devor did not even consider these alternative causes for Nobilis's downfall.  D.I. 25-15 [A1023–A1027].  As the bankruptcy court aptly explained, Devor's "report

19

relies upon conclusory allegations regarding financial misstatements and does not provide a reason why the alleged breaches of fiduciary duty, rather than the underlying economic challenges the company faced, were responsible for the company's total loss in market value."   D.I. 25-27 [A5771].

Devor also offered little more than a conclusory pronouncement that "a reasonable method for determining damages" is comparing (1) the enterprise value before the purported financial misstatement; and (2) "Nobilis'[s] financial condition and liquidation value."  D.I. 25-22 [A4641] (sealed).  This kind of "trust-me-I'm-an-expert" proclamation is insufficient to constitute material summary judgment evidence on damages.  *See UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 834–35 (3d Cir. 2020) (concluding the district court abused its discretion by admitting expert testimony that is subjective); *see also General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.").  An expert's opinion must be "the product of reliable principles and methods," FED. R. EVID. 702(c), and Devor's opinion is not.  Under these principles, Appellant's vague argument that the bankruptcy court ignored evidence concerning the cause of Nobilis's downfall, (D.I. 24 at 18), is a red herring.  The bankruptcy court correctly concluded that Devor's report "offers little more than the conclusory allegation that" the purported accounting improprieties caused Nobilis's downfall.  D.I. 25-27 [A5771].

In sum, the lack of material and admissible evidence on damages is yet another basis for affirming the bankruptcy court's grant of summary judgment in favor of Fleming.

### III.   <u>**The bankruptcy court correctly dismissed the equitable subordination complaint**</u>.

This Court should also affirm the bankruptcy court's dismissal of Appellant's equitable subordination complaint.  Appellant sought to equitably subordinate the claim of BBVA, the debtor's secured creditor, which was transferred to Fleming, Moreno, and Young in connection

with the settlement of a separate lawsuit brought by BBVA in Texas state court.  D.I. 25-40 [A6099–A6103].  Under the applicable statute, "after notice and a hearing, the court may . . . under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim[.]"  11 U.S.C. § 510(c)(1).  As the word "may" illustrates, equitable subordination is a discretionary remedy.  *See, e.g.*, *Eng.-Speaking Union v. Johnson*, 381 B.R. 1, 6–7 (D.D.C. 2008), *aff'd*, 321 F. App'x 4 (D.C. Cir. 2009) (per curiam).  Before a court can exercise its discretion to award this extraordinary remedy, the party seeking subordination must show:  (1) the claimant "engaged in some type of inequitable conduct"; (2) that misconduct "resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant"; and (3) subordination would not be inconsistent with the Bankruptcy Code.  *See In re Winstar Comms., Inc.*, 554 F.3d 382, 411 (3d Cir. 2009) (citation omitted).  Appellant bears the burden.  *In re Aéropostale, Inc.*, 555 B.R. 369, 397 (Bankr. S.D.N.Y. 2016).

This Court should affirm the bankruptcy court's dismissal because Appellant's breach-of-fiduciary-duty claims fail.  Before the bankruptcy court, Appellant "agreed that there is a basis for equitable subordination only if he succeeds on the breach of fiduciary duty claims."  D.I. 25-27 [A5773] (citing D.I. 25-26 [A5712–A5713]) (Dec. 13, 2023 Hearing Tr.).  As explained above, there is no genuine issue of material fact on Appellant's claims with respect to Fleming (or the other appellees).    Accordingly, the bankruptcy court properly dismissed the equitable subordination complaint.  This Court's analysis should stop there.

The bankruptcy court also offered an alternative basis for dismissal:  "even if the claims for breach of fiduciary duty had survived a motion for summary judgment, it would still be far from clear that the claims that defendants acquired from BBVA would be subject to equitable subordination."  D.I. 25-27 [A5773].  The bankruptcy court acknowledged the "robust secondary

market in claims against debtors in bankruptcy," with holders of those claims being "willing sellers who would rather accept the cash being offered by the buyer than continue to hold the claim and take their chances on what their ultimate distribution will be." *Id.* And, in this case, "[t]he equitable subordination complaint makes no allegation, other than its claim about the defendants' underlying liability, that defendants did anything inequitable in connection with their acquisition of the claims." *Id.*

The Court need not, and should not, reach Appellant's arguments challenging the bankruptcy's court's alternative basis for dismissal because Appellant's equitable subordination complaint is premised on the purported breaches of fiduciary duty that were properly dismissed. But if the Court does reach these arguments, there are ample grounds to affirm.

To begin, the equitable subordination complaint does not plausibly allege that BBVA, which assigned the claim, engaged in inequitable conduct. *See In re John Varvatos Enters. Inc.*, No. 21-2766, 2022 WL 2256017, at *2 (3d Cir. June 23, 2022) (unpublished) (affirming the bankruptcy court's dismissal of a claim for equitable subordination on the basis that the judgment creditors "failed to allege any inequitable conduct"). To the contrary, the claim was assigned through a good-faith litigation settlement, negotiated at arm's length by sophisticated parties. D.I. 25-40 [A6099–A6103]. As the bankruptcy court correctly acknowledged, there is a "robust secondary market in claims against debtors in bankruptcy." D.I. 25-27 [A5773]; *see also* D.I. 25-40 [A6105–A6107]. Further, the equitable subordination complaint fails to plausibly allege either an injury caused to other creditors or an unfair advantage to Fleming or any of the other appellees. *See* D.I. 25-40 [A6107]. Instead, and at best, Appellant alleges harm to BBVA. D.I. 25-38 [A6077–A6078] (sealed). And because of the assignment, any recovery for breach of fiduciary

duty would not benefit any creditor; instead, that recovery would ultimately go to Fleming, Young, and Moreno through BBVA's assignment.

Given these deficiencies, Appellant failed to carry his burden of plausibly alleging the elements of equitable subordination, and he failed to show that the bankruptcy court erred in declining to exercise its discretion to award an extraordinary remedy.[8]  This Court should affirm.

*    *    *

In sum, the Court need not decide Appellant's equitable-subordination arguments because the bankruptcy court properly granted summary judgment in favor of Fleming on Appellant's breach-of-fiduciary-duty claims.  But even setting that aside, there are numerous meritorious grounds for affirming the bankruptcy court's dismissal of the equitable-subordination complaint.

<strong><u>CONCLUSION</u></strong>

The bankruptcy court issued a thorough and well-reasoned opinion after extensive discovery, briefing, and oral argument.  It is unsurprising, then, that Appellant fails to show this Court that the bankruptcy court erred.  Simply put, the bankruptcy court correctly entered summary judgment in favor of Fleming on the breach-of-fiduciary-duty claims because Appellant failed to introduce material evidence:  (1) rebutting the business judgment rule and the presumption of good faith; (2) demonstrating Fleming placed his own interest over the interest of the corporation or the shareholders, let alone acted in bad faith (duty of loyalty); (3) showing that Fleming acted in a manner that surpasses gross negligence or deviated from the conduct that an ordinarily careful and prudent person would use (duty of care); (4) illustrating Fleming observed red flags and knowingly disregarded them in a manner that rises to bad faith (*Caremark*); or (5) connecting any purported

---

[8] To avoid duplicating any briefing, and to the extent the Court wants further guidance on these issues, Fleming incorporates by reference the Motion to Dismiss and Reply filed before the bankruptcy court.  D.I. 25-40 [A6093–A6109]; D.I. 25-42 [A6128–A6141].

breaches to the millions in damages Appellant seeks.  In fact, the record firmly establishes that Fleming as CEO satisfied his fiduciary duties by, among other actions, retaining a top accounting firm, hiring additional staff, and ensuring a rigorous, multi-layered review of Nobilis's financials. Finally, because the bankruptcy court properly entered summary judgment in favor of Fleming on Appellant's breach-of-fiduciary-duty claims, the bankruptcy court also correctly dismissed Appellant's equitable subordination complaint.

Accordingly, Fleming respectfully requests that the Court:

(i)     Affirm the grant of summary judgment in favor of Fleming;

(ii)    Affirm the dismissal of the Appellant's equitable subordination complaint;

(iii)   Tax costs against Appellant, FED. R. BANKR. P. 8021(a)(2); and

(iv)    Grant such other and further relief, at law or in equity, to which Fleming may show himself to be justly entitled.

Dated: January 22, 2025
            Wilmington, Delaware

**PAUL HASTINGS LLP**
Paul R. Genender (admitted *pro hac vice*)
Jake Rutherford (admitted *pro hac vice*)
Marco Vasquez Jr. (admitted *pro hac vice*)
2001 Ross Avenue, Suite 2700
Dallas, TX  75201
Telephone:  (972) 936-7500
paulgenender@paulhastings.com
jakerutherford@paulhastings.com
marcovasquezjr@paulhastings.com

*Attorneys for Appellee*
*Harry J. Fleming*

Respectfully submitted,

*/s/ Mark L. Desgrosseilliers*

**CHIPMAN BROWN CICERO & COLE, LLP**
Mark L. Desgrosseilliers (No. 4083)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone: (302) 295-0191
Facsimile: (302) 295-0199
desgross@chipmanbrown.com

–and–

**LYNN PINKER HURST**
  **& SCHWEGMANN, LLP**
Edward J. Dennis (admitted *pro hac vice*)
Kent Krabill (admitted *pro hac vice*)
Leo Park (admitted *pro hac vice*)
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone: (214) 981-3800
Facsimile: (214) 981-3839
jdennis@lynnllp.com
kkrabill@lynnllp.com
pdisbennett@lynnllp.com
lpark@lynnllp.com

*Attorneys for Appellee Harry J. Fleming*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned hereby certifies in accordance with Rule 8015(h) of the Federal Rules of Bankruptcy Procedure that this document complies with the type-volume limitation under Rule 8015(a)(7)(B) because this document (1) contains 7,426 words, excluding the parts of the filing exempted by Rule 8015(g); and (2) does not exceed thirty pages. *See* D.I. 17 (Order Consolidating Appeals and Objections and Responses and Setting Briefing Schedule).

Dated: January 22, 2025
      Wilmington, Delaware

*/s/ Mark L. Desgrosseilliers*

**PAUL HASTINGS LLP**
Paul R. Genender (admitted *pro hac vice*)
Jake Rutherford (admitted *pro hac vice*)
Marco Vasquez Jr. (admitted *pro hac vice*)
2001 Ross Avenue, Suite 2700
Dallas, TX 75201
Telephone: (972) 936-7500
paulgenender@paulhastings.com
jakerutherford@paulhastings.com
marcovasquezjr@paulhastings.com

***Attorneys for Appellee***
***Harry J. Fleming***

**CHIPMAN BROWN CICERO & COLE, LLP**
Mark L. Desgrosseilliers (No. 4083)
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone: (302) 295-0191
Facsimile: (302) 295-0199
desgross@chipmanbrown.com

–and–

**LYNN PINKER HURST**
  **& SCHWEGMANN, LLP**
Edward J. Dennis (admitted *pro hac vice*)
Kent Krabill (admitted *pro hac vice*)
Leo Park (admitted *pro hac vice*)
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone: (214) 981-3800
Facsimile: (214) 981-3839
jdennis@lynnllp.com
kkrabill@lynnllp.com
pdisbennett@lynnllp.com
lpark@lynnllp.com

***Attorneys for Appellee Harry J. Fleming***